O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PLANET COFFEE ROASTERS, INC., )<br><br>          Plaintiff, )<br><br>     v. )<br><br>HUNG DAM, dba PLANET COFFEE, et )<br>al., )<br><br>          Defendants. )<br>_____ ) | Case No. SACV 09-00571-MLG<br><br>MEMORANDUM OPINION AND ORDER<br>DENYING PLAINTIFF'S MOTION FOR<br>PRELIMINARY INJUNCTION WITHOUT<br>PREJUDICE |

**I.   <u>Factual and Procedural Background</u>**

On August 20, 2009, Plaintiff Planet Coffee Roasters, Inc., filed a motion for preliminary injunction seeking to enjoin Defendant Hung Dam from using the mark "Planet Coffee" as the name of his coffee shop, located in Garden Grove, California. (Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. at 4.) Plaintiff alleges that Defendant is willfully infringing Plaintiff's unregistered trademark by use of a confusingly similar mark. (Id.) Plaintiff alleges that Defendant's use of the mark "Planet Coffee" has caused consumer confusion between Defendant's mark and Plaintiff's. (Id.)

//

In the first amended complaint, Plaintiff alleges that, at least since 1990, it has been operating a well-known and successful business offering services related to coffee, including coffee beans, coffee roasting supplies and equipment. The first amended complaint accuses Defendant of unlawfully using Plaintiff's mark "Planet Coffee" in violation of section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Plaintiff does not hold a federally registered trademark on either "Planet Coffee" or "Planet Coffee Roasters."

On September 4, 2009, Defendant filed an opposition to the motion for preliminary injunction. On September 22, 2009, the Court heard oral argument on the motion. For the reasons stated below, the motion for preliminary injunction is denied without prejudice.

**II.   <u>Standard of Review</u>**

Under Ninth Circuit precedent, a plaintiff is entitled to a preliminary injunction when it establishes either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits, where the balance of hardships tips sharply in plaintiff's favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-1205 (9th Cir. 2000). "This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Reg. Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003.), *see also GARCOA v. PH Beauty Labs Inc.,* 2009 WL 2489223 *2 (C.D. Cal. 2009).

//

//

1    In 2008, the Supreme Court found that the "possibility of
2    irreparable harm" standard was too lenient, and held that a plaintiff
3    must demonstrate that irreparable injury is "likely in the absence of
4    an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 129
5    S. Ct. 365, 375 (2008). "Issuing a preliminary injunction based only
6    on a possibility of irreparable harm is inconsistent with our
7    characterization of injunctive relief as an extraordinary remedy that
8    may only be awarded upon a clear showing that the plaintiff is
9    entitled to such relief." *Id.* at 375-376 (citing *Mazurek v.*
10   *Armstrong*, 520 U.S. 968, 972 (1997)(per curiam)).

11   Accordingly, a plaintiff seeking a preliminary injunction must
12   establish that there is a likelihood of success on the merits, that it
13   is likely to suffer irreparable harm in the absence of injunctive
14   relief, that the balance of equities tips in the its favor, and that
15   an injunction is in the public interest. *Id.* at 374.[1] Because a
16   preliminary injunction is such an extraordinary remedy, "[i]n each
17   case, courts must 'balance the competing claims of injury and must
18   consider the effect on each party of the granting or withholding of
19   the requested relief.'" *Winter*, 129 S. Ct. at 374 (citing *Amoco*
20   *Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

---

[1] The Ninth Circuit has recently held that in a trademark
infringement case, a plaintiff is entitled to a presumption of
irreparable harm upon a showing of likelihood of success on the merits.
*Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,
877 (9th Cir. 2009)(citing *El Pollo Loco, Inc. v. Hashim*, 316 F.3d
1032, 1038 (9th Cir. 2003) and *GoTo.com, Inc.*, 202 F.3d at 1205, n.4).
As noted in *GARCOA* at *2 fn 4, the decision in *eBay Inc. v.*
*MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006)(holding that
traditional principles of equity apply in evaluating the issuance of a
permanent injunction in patent cases) raises some question as to the
continuing validity of this presumption.

Establishing a likelihood of confusion is the central element of proving trademark infringement, and the key issue is whether "the similarity of the marks is likely to confuse customers about the source of the products." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993). In determining whether there is a likelihood of confusion, the Ninth Circuit looks to the so-called *Sleekcraft* factors, which include: (1) the similarity of the marks; (2) the relatedness of the two companies' goods; (3) the marketing channels used; (4) the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by the purchaser. *GoTo.com*, 202 F.3d at 1205 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). The eight-factor test is a "pliant" one, in which "some factors are much more important than others." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The similarity of the marks, the relatedness of the goods or services and the use of a common marketing channel, constitute "the controlling troika in the *Sleekcraft* analysis." *GoTo.com*, 202 F.3d at 1205.

## III. <u>Discussion and Analysis</u>

> **A.   Plaintiff Has Failed to Meet Its Burden of Showing a Likelihood of Success on the Merits**

"In deciding whether to grant a preliminary injunction, a district court must consider whether the plaintiffs have demonstrated that they are likely to prevail on the merits." *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004). "Probability of

4

success" implies that the moving party must have a very clear and strong case. McCarthy, *Trademarks and Unfair Competition* § 30:45 (4th ed.). If there is doubt as to the probability of plaintiff's ultimate success on the merits, the preliminary injunction must be denied. *Id.* In this case, Plaintiff has not clearly demonstrated a probability of success on the merits.

### 1.   Similarity of the Marks

The first *Sleekcraft* factor, the similarity of the marks, has always been considered a critical question in the likelihood-of-confusion analysis. *See Brookfield*, 174 F.3d at 1054. Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion. *GoTo.com*, 202 F.3d at 1206. The marks must be considered in their entirety and as they appear in the marketplace. *Id.* Similarity is judged in terms of appearance, sound, and meaning. *See Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998). Similarities are weighed more heavily than differences. *See Goss*, 6 F.3d at 1392.

Plaintiff's logo consists of a blue orb or planet with a blue ring around the orb on an orange oval background. The words "Planet Coffee Roasters, Inc." appear above the blue orb and the words "Fresh Coffee" appear below it. All of these words are in upper and lower case letters. Defendant's logo consists of a green orb or planet with a white partial ring around the orb on a beige or tan oval background. There are three white stars that appear to the left, right and top of the orb. The words "Planet Coffee" appear on the orb, with "Planet" in all capital letters directly above "Coffee," which is in upper and lower case letters.

//

The two marks are clearly similar. They are nearly identical in terms of sound, with the only difference being that Plaintiff's mark includes the additional words "Roasters, Inc." The two marks are somewhat similar in terms of meaning, except that Plaintiff's mark is more specific in that it also includes "Roasters," rather than simply "Planet Coffee." As discussed above, the two marks are somewhat less similar in terms of appearance, with the marks appearing in different colors, capitalization and font. However, this does not distract from the general similarity of the marks and this factor weighs in favor of Plaintiff.

### 2. Relatedness of the Goods

The second factor is the degree of relatedness of the two companies' goods. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. In this case, the goods offered by the two companies are obviously similar. Both companies sell coffee, although Plaintiff apparently sells roasted coffee and coffee roasting supplies to wholesale customers such as retail outlets and grocery stores, while Defendant generally sells coffee by the cup and as well as an undetermined number of bags of coffee beans to retail customers.[2] *See e.g., Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 153-155 (9th Cir. 1963) (holding that beer and whiskey were sufficiently similar products to create a likelihood of confusion regarding the source of origin when sold under the same

---

[2] At the hearing on the motion, counsel for Plaintiff noted that the market for Planet Coffee is primarily in the Vietnamese-American community. The Court notes that Defendant is located in Garden Grove, which is a section of Orange County with a dense Vietnamese-American population.

trade name). Here, although the two parties are not direct competitors, they both provide services related to coffee and therefore, customer confusion could result.

### 3.   Marketing Channel Used

The next factor to consider is whether both companies use the same marketing channel. As discussed above, Plaintiff markets its product to wholesale customers, such as supermarkets, coffee shops and coffee distributors. Plaintiff currently does not operate any coffee shops. Defendant, on the other hand, generally sells coffee by the cup and an undetermined number of bags of coffee beans to retail customers who come into the coffee shop. Therefore, the marketing channels used by the two companies are not closely related and this factor favors Defendant.

### 4.   Strength of the Mark

The next factor to consider is the relative strength of the mark at issue. The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws. This "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength. *GoTo.com*, 202 F.3d at 1207 (citing McCarthy, *Trademarks and Unfair Competition* § 11:83 (rev. ed. 1999)). Marks can be conceptually classified along a spectrum of increasing inherent distinctiveness. *See Brookfield*, 174 F.3d at 1058. From weakest to strongest**,** marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful. *Id*.

The Court finds that the mark "Planet Coffee Roasters" is suggestive. A suggestive mark conveys an impression of a good, but requires the exercise of some imagination and perception to reach a

conclusion as to the product's nature. *See, e.g., American Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103 (2d Cir. 1978)("Roach Motel" insect trap). Unlike arbitrary or fanciful marks which are typically strong, suggestive marks are presumptively weak. *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir. 1987). The mark "Planet Coffee Roasters" suggests, rather than describes, an ingredient, quality or characteristic of Plaintiff's business, i.e., that Plaintiff is in the business of roasting coffee.

Placement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength, as advertising expenditures can transform a suggestive mark into a strong mark, where, for example, that mark has achieved actual marketplace recognition. *Brookfield*, 174 F.3d at 1058. Plaintiff argues that its strength is established through its use of the mark "Planet Coffee Roasters" since 1990 and its expenditure of "several hundreds of thousands of dollars" in the marketing of its mark. (Pl.'s Mot. at 12-13.) However, Plaintiff has not presented substantial evidence establishing the wide-spread recognition of its mark. Plaintiff attaches a single invoice from 1990 with the words "Planet Coffee" handwritten on the invoice. This is insufficient proof of the use of the mark "Planet Coffee." Plaintiff also has provided a declaration as proof of its investment of "several hundreds of thousands of dollars" in marketing of the mark, but has provided no additional evidence of its marketing expenditures. Plaintiff has failed to demonstrate how and where this "several hundred thousand dollars" was spent. Accordingly, absent sufficient proof of the conceptual and commercial strength of Plaintiff's mark "Planet Coffee Roasters," the Court finds that the mark is relatively weak. This factor slightly favors Defendant.

### 5.   Defendant's Intent in Selecting the Mark

The next factor is the defendant's intent in selecting the mark. This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark. *See Goss*, 6 F.3d at 1394 ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public."). However, the Ninth Circuit has emphasized the minimal importance of the intent factor: "Importantly, an intent to confuse customers is not required for a finding of trademark infringement." *Brookfield*, 174 F.3d at 1059 (citing *Dreamwerks*, 142 F.3d at 1132).

Here, the Court cannot determine whether Defendant adopted the mark "Planet Coffee" with actual or constructive knowledge of Plaintiff's use of the mark "Planet Coffee Roasters." Defendant contends that it did not have any knowledge of Plaintiff's alleged prior use of the mark when it obtained the fictitious business name "Planet Coffee" from Orange County. (Def.'s Opp. at 6.) Defendant also argues that it did not have any knowledge of Plaintiff's use of the mark because Plaintiff is not the registered owner of the mark "Planet Coffee." (Def.'s Opp. at 3.) Plaintiff concedes that it is difficult to prove Defendant's intent in using the mark "Planet Coffee." (Pl.'s Mot. at 13.) Considered as a whole, this factor appears indeterminate.

### 6.   Evidence of Actual Confusion

The next factor is evidence of actual confusion. Plaintiff has submitted a number of declarations in support of its contention that coffee shop owners, individual retail customers and the general public have all been actually confused by Defendant's use of the mark "Planet Coffee." Plaintiff argues that its customers have been confused into

9

believing that Defendant's business is owned, operated or somehow connected to Plaintiff's business. (Pl.'s Mot. at 14.) "Evidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352.

Defendant contends that the declarations supplied by Plaintiff are insufficient as evidence of actual confusion because they have been provided by customers and other individuals who are already familiar with Plaintiff's business. (Def.'s Opp. at 6-7.) *See Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 874 (9th Cir. 2002)(holding that six declarations from Japanese-American business owners already familiar with Plaintiff's business were insufficient to establish a "mental recognition in buyers' and potential buyers' minds" between Japan Telecom's trade name and a single source). In *Japan Telecom*, the court held that the declarations "all come from business owners who 'personally' knew that Japan Telecom had been in business for years," including at least one former customer. *Id.* As the court noted, "Every small business with a descriptive name can point to at least a few former customers who remember its name, and every small business owner can point to some acquaintances familiar with what he does for a living. None of that means that the relevant buying public makes the same associations." *Id.*

From a review of the declarations in support of Plaintiff's motion, it would seem that Plaintiff has offered some evidence of actual confusion, although the declarations appear to be from Plaintiff's customers and others already familiar with Plaintiff's business. This is insufficient to establish evidence of actual confusion for purposes of a preliminary injunction.

10

### 7.   Plaintiff's Likelihood of Expansion

The next factor is the likelihood of the plaintiff's expansion into other markets. "The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." *Brookfield*, 174 F.3d at 1060. It is unclear whether Plaintiff will enter more directly into Defendant's principal market, that is, whether Plaintiff will decide to open a coffee shop catering to individual retail customers. Given that Plaintiff has not opened a retail coffee shop in its almost twenty years of operation, it seems less likely that Plaintiff will do so in the future. Plaintiff states that it "does contemplate opening individual coffee shops to promote its products more to the retail industry," (Pl.'s Mot. at 14.), but has not provided any further detail as to when or where it plans to open any retail coffee shops. Given the lack of factual evidence available on this issue, the Court finds that this factor is indeterminate.

### 8.   Degree of Care Exercised by the Purchaser

The final *Sleekcraft* factor is the degree of care likely to be exercised by purchasers of the product. Likelihood of confusion is determined on the basis of a "reasonably prudent consumer." *Dreamwerks*, 142 F.3d at 1129; *Sleekcraft*, 599 F.2d at 353. What is expected of the reasonably prudent consumer depends on the circumstances. A consumer is expected to be more discerning and less easily confused when purchasing expensive items. *See, e.g., Goss*, 6 F.3d at 1393. On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, making confusion more likely. *See, e.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) (wine and cheese). Because the product

11

involved here, a bag of coffee beans or a cup of coffee, is relatively inexpensive, this would seem to indicate that consumers are less likely to exercise care when purchasing these products. Therefore, this factor slightly favors Plaintiff.

Balancing the *Sleekcraft* factors, the Court finds that although Plaintiff's cause of action is not insubstantial, it has not clearly established a probability of success on the merits based upon the evidence presented to the Court. Indeed, the evidence is not of significant weight so as to satisfy the *Sleekcraft* test.

**B. Plaintiff Has Failed to Demonstrate a Likelihood of Irreparable Harm in the Absence of a Preliminary Injunction**

Even assuming that a probability of success on the merits has been shown, as discussed above, a plaintiff is no longer granted the presumption of irreparable harm upon such a showing. The plaintiff must also show that it will suffer irreparable injury pending a full trial on the merits. "Irreparable injury" has been defined as that injury which is certain and great. *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F.Supp. 1210, 1216 (N.D.Cal. 1969). Plaintiff must demonstrate that the injury it will suffer waiting for trial without a preliminary injunction will be "irreparable," in the sense that money damages will not be adequate compensation after the fact. *Id.* Irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial. McCarthy, *Trademarks and Unfair Competition*, § 30:46.

Plaintiff has failed to show that it has suffered any injury at all, let alone injury that is "great." Plaintiff simply asserts that allowing Defendant to "use[] a confusingly identical name and sell[] inferior coffee products will damage, if not destroy entirely, Planet

12

1   Coffee's reputation and goodwill." (Pl.'s Mot. at 15.) However, it
2   offers no evidentiary support at all for this claim. Even assuming
3   that Plaintiff's business has suffered some monetary loss, Plaintiff
4   has made no showing that money damages will be inadequate to
5   compensate for its losses.

6       **C.   The Balance of Equities Does Not Tip in Plaintiff's Favor**

7       In exercising its equitable power, the Court must balance the
8   harms and hardships between the parties. Before a preliminary
9   injunction may issue, the court must identify the harm that a
10  preliminary injunction might cause the defendant and weigh it against
11  plaintiff's threatened injury. "[T]he real issue in this regard is the
12  degree of harm that will be suffered by the plaintiff or the defendant
13  if the injunction is *improperly* granted or denied." *Scotts Co. v.*
14  *United Industries Corp.*, 315 F.3d 264, 284 (4th Cir. 2002)(emphasis in
15  original).

16      In assessing the relative hardships to each party, the court may
17  consider the relative size and strength of each party. *See Sardi's*
18  *Restaurant Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985). As the
19  court in *Sardi's Restaurant* found in denying a preliminary injunction
20  against the use of the name "Sardie's," a more established business is
21  in a better position to deal with any "minor identity problems" that
22  might arise than a new business. *Id.* "Although the relative size of
23  the respective businesses is not a defense to a suit for a permanent
24  injunction, *see Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 357-
25  358 (9th Cir. 1948), it is certainly relevant to the potential
26  hardship from changing a business' name." *Id.* Here, Defendant is
27  smaller and much younger than Plaintiff, having been in business only
28  since late 2008. It appears that having to change its name so soon

after opening its business demonstrates at least some potential hardship to Defendant from the grant of a preliminary injunction.

Plaintiff contends that it will suffer greater hardship from the denial of an injunction because Defendant's use of the mark "Planet Coffee" has caused Plaintiff to lose sales, increase marketing costs to mitigate confusion, and has damaged Plaintiff's reputation and goodwill. (Pl.'s Mot. at 15.) However, aside from unsubstantiated claims made in declarations submitted by two of its employees, Plaintiff has offered no factual evidence in support of its claim that it has been harmed by Defendant's use of the mark "Planet Coffee." Therefore, Plaintiff has not clearly demonstrated that the balance of hardships tips sharply in its favor.

**D.   Plaintiff Has Not Demonstrated that a Preliminary Injunction Is in the Public Interest**

In exercising their sound discretion, courts of equity "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S.Ct. at 376-377. Where the public interest is involved, the court must determine whether the public interest favors the moving party. *Sammartano v. First Judicial Dist. Ct., in & for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002). Injunctive relief may be refused where it would adversely affect the rights of persons who are not parties to the litigation. *Horwitz v. Southwest Forest Indus., Inc.*, 604 F.Supp. 1310, 1136 (D.Nev. 1985).

As neither party has addressed this issue, it is unclear whether there is any public interest at stake, and if so, whether the public interest would be served by granting or denying a preliminary injunction in this particular case.

14

**IV.  ORDER**

For the reasons discussed above, Plaintiff's motion for a preliminary injunction is hereby **DENIED** without prejudice.

Dated: February 18, 2010

_____
Marc L. Goldman
United States Magistrate Judge

15